**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case Number 1:16-cv-20291-Martinez/Goodman**

**JAMES ENNIS, individually & on**
**behalf of all similarly situated,**

      **Plaintiff(s),**

**vs.**

**TMX FINANCE, LLC &**
**TMX FINANCE OF FLORIDA, INC.**

      **Defendants.**           /

**PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION & FACILITATION**
**OF COURT-AUTHORIZED NOTICE PURSUANT TO 29 U.S.C. § 216**
**AND SUPPORTING MEMORADUM OF LAW**

Pursuant to 29 U.S.C. § 216(b), the Federal Rules of Civil Procedure and the Local Rules of this Honorable Court, Plaintiff, JAMES ENNIS, on behalf of himself and all others similarly-situated ("Plaintiffs"), requests entry of an Order permitting Court-supervised Notice to all workers affected by the claims in this action.

This is a collective action to enforce the overtime and liquidated damages provisions of Sections 7(a) and 16(b) of the Fair Labor Standards Act ("FLSA"). Plaintiff, James Ennis, worked for Defendants in Florida and Georgia from September 213 to January 2016. As a General Manager, Plaintiff regularly worked more than forty (40) hours per week without proper overtime pay. Defendants misclassified Plaintiff and other similarly-situated General Managers and paid them pursuant to a uniform, company-wide "General Manager Pay Policy" that was designed to intentionally deprive their General Managers of overtime pay.

This is not the first case in which Defendants' General Manager Pay Policy has come under scrutiny. In *Terry v. TMX Finance, LLC*, a group of General Managers in Training sued

collectively for violations of the FLSA's overtime provisions based on similar claims that they were intentionally misclassified and denied overtime wages.[1] Likewise, in *Fields, et al. v. TMX Finance, LLC*, another General Manager sued to recover unpaid overtime.[2] The *Fields* case settled for $25,000. *Id.*

Defendants' General Manager Pay Policy is illegal. Defendants know their policy is illegal and the General Managers who suffer(ed) lost wages as a result are entitled to notice of the rights afforded to them by Congress. Accordingly, Plaintiff seeks to facilitate notice to all "General Managers" nationwide who performed work for Defendants (d/b/a TitleMax, TitleBucks, InstaLoan and/or TMX Credit) within the last three (3) years who: (1) worked at any of Defendants' "store locations"[3] within the past three (3) years; (2) earned less than $100,000 a year; and (c) worked more than forty (40) hours in one or more work weeks without proper overtime pay.

For the reasons stated more fully below, Plaintiff moves this Honorable Court to conditionally certify and authorize Plaintiff to mail and e-mail Notice (<u>Exhibits A and B</u>) of this lawsuit and a Consent to Become a Party Plaintiff Form (<u>Exhibit C</u>) to a putative class of General Managers similarly-situated to the named Plaintiff, who performed work for the Defendants during the period beginning January 2013 to the present, including persons who

---

[1] *Terry, et al. v. TMX Finance, LLC*, Case No.1:13-cv-6156, [D.E. 76] (N.D. Ill. May 19, 2014) (74 opt-in plaintiffs joined and the parties notified the district court that the case settled on January 7, 2016).

[2] *Fields, et al. v. TMX Finance, LLC*, 1:15-cv-53, [D.E. 40] (S.D. Ala. Oct. 19, 2015). Although *Fields* was styled as a Collective Action, nothing in the record in *Fields* suggests that any of Defendants' General Managers received notice of the allegations or their right to recover unpaid overtime lost as a result of the company's unlawful pay policy. *Id.*

[3] Defendants employ "General Managers" at both "store locations" and "corporate offices." For purposes of this Motion, General Managers who worked at Defendants' "corporate offices" are specifically excluded.

2

remain employed by the Company. Conditional certification and prompt dissemination of notice of this lawsuit to the General Managers affected by Defendants' unlawful misclassification policy is critical to informing them of their legal right to recover wages which this Court may determine were unlawfully withheld. The proposed Notices (attached hereto as Exhibits A and B) will fully inform the putative class members of their right to join this case, their right to elect the legal representative of their choice, their right not to join the case, and the consequences of each decision. As explained more fully below, Plaintiff far exceeds this Court's lenient standard for conditional certification of a collective action under the FLSA as the affidavits and evidence filed in support of this Motion establish that preliminary certification is warranted.

## STATEMENT OF FACTS

1.      Defendant TMX Finance, LLC is one of the nation's largest title lending companies. [D.E. 1 at ¶ 10]; *see also* https://www.tmxcareers.com/why-join-tms/. Indeed, "[s]ince the very first TitleMax store opened its doors in 1998, TMX Finance has expanded to over 1,400 store spanning from coast to coast." *Id.* "From California to Georgia, to Ohio to Texas, to hundreds of places in between, TMX Finance is consistently growing." *Id.*

2.      Defendant TMX Finance, LLC operates as TitleBucks, TitleMax and InstaLoans. [D.E. 1 at ¶ 7]; *see also* https://www.tmxcareers.com/store-locations/.

3.      Defendant TMX Finance, LLC operates in a dozen or more states. [D.E. 1 at ¶ 8].

4.      Plaintiff Ennis worked at one of TMX Finance's "InstaLoan" stores. [D.E. 1 at ¶ 11].

5.      "InstaLoan" is a registered fictitious name with the Florida Department of State, Division of Corporations. The Fictitious name is owned by Defendant TMX Finance of Florida, Inc. [D.E. 1 at ¶ 12].

6.     Both TMX Finance, LLC and TMX Finance of Florida, Inc. are Delaware Corporations and both have a principle place of business at 15 Bulls St., Suite 200, Savannah, GA 31401. [D.E. 1 at ¶¶ 13, 14].

7.     Both Defendants list Tracy Young as their corporate officer. [D.E. 1 at ¶ 15].

8.     Defendants are and were joint employers of Plaintiff Ennis. [D.E. 1 at ¶¶ 2, 9, 11, 12, 13, 14, 21, 23, 26].

9.     Defendants employ(ed) General Managers similarly-situated to Plaintiff Ennis. [D.E. 1 at ¶¶ 1, 4, 5, 6, 18, 19, 20, 42, 43, 44, 45, 46, 47, 48]; Declaration of William Gardner ("Gardner Dec.") [D.E. 8-1]; Declaration of Dawn Baskin ("Baskin Dec.") [D.E. 9-1].

10.    Defendants treat their General Managers the same regardless of location. [D.E. 1 at ¶ 4]; Gardner Dec.; Baskin Dec.; *see also Terry, et al. v. TMX Finance, LLC*, Case No.1:13-cv-6156, [D.E. 76] (N.D. Ill. May 19, 2014); *Fields, et al. v. TMX Finance, LLC*, Case No. 1:15-cv-53, [D.E. 40] (S.D. Ala. Oct. 19, 2015).

11.    Defendant's General Managers, including Plaintiff Ennis, regularly work(ed) more than forty (40) hours per week without proper overtime pay. [D.E. 1 at ¶¶ 5, 41]; Gardner Dec. at ¶ 5; Baskin Dec. at ¶ 5.

12.    Defendants have a uniform, company-wide policy of misclassifying their General Managers as exempt from the FLSA's overtime requirements. [D.E. 1 at ¶¶ 6, 18, 19, 42, 43, 44, 45, 46]; Gardner Dec.; Baskin Dec.; *see also Terry, et al. v. TMX Finance, LLC*, Case No.1:13-cv-6156, [D.E. 76] (N.D. Ill. May 19, 2014); *Fields, et al. v. TMX Finance, LLC*, Case No. 1:15-cv-53, [D.E. 40] (S.D. Ala. Oct. 19, 2015).

13.    Defendants are, individually and collectively, an "enterprise" covered by the FLSA. [D.E. 16 at ¶¶ 8, 10, 22, 23, 24, 25, 35, 36, 37, 38, 39, 40].

14.     The General Managers covered by this action worked overtime hours without proper payment. [D.E. 1 at ¶¶ 5, 6, 41, 42]; Gardner Dec. at ¶¶ 5, 8; Baskin Dec. at ¶¶ 5, 8.

15.     The General Managers covered by this action are not exempt from the FLSA's overtime requirements. [D.E. 1 at ¶ 6].

16.     Defendants utilize a uniform pay policy to compensate their General Managers. [D.E. 1 at ¶¶ 4, 5, 6, 20, 41, 42, 48]; Gardner Dec. at ¶¶ 5, 8; Baskin Dec. at ¶¶ 5, 8.

17.     Defendants' General Managers are similarly-situated in that they were subject to the same unlawful pay policy. [D.E. 1 at ¶¶ 4, 5, 6, 20, 41, 42, 48]; Gardner Dec. at ¶¶ 5, 8; Baskin Dec. at ¶¶ 5, 8.

18.     Defendants' violations of the FLSA were and continue to be knowing, willful or in reckless disregard of the law, as evidenced by prior litigation. [D.E. 1 at ¶¶ 18, 19, 51].

19.     Defendant TMX Finance, LLC and its subsidiaries were sued for violations of Section 7(a) of the FLSA on at least two (2) prior occasions. *Terry, et al. v. TMX Finance, LLC,* Case No.1:13-cv-6156 (N.D. Ill. 2014); *Fields, et al. v. TMX Finance, LLC,* Case No. 1:15-cv-53 (S.D. Ala. 2015).

20.     Both *Terry* and *Fields* involved allegations similar to those in this case (i.e. misclassification of General Manager employees). *Id.* Both cases resulted in monetary settlements. *Id.* Only one of them provided notice to affected employees (limited to General Managers in Training). *Terry, et al. v. TMX Finance, LLC,* Case No.1:13-cv-6156 (N.D. Ill. 2014)

21.     The settlements reached in the *Terry* and *Fields* matters did not include payments to *all* aggrieved workers who were subject to Defendants' unlawful misclassification practices during the applicable statutory period. Nor did they provide the Notice to all affected General

Managers as contemplated by the Supreme Court in *Hoffman-La Roche, Inc. v. Sperling*. 293 U.S. 165 (1989). [D.E. 1 at ¶ 47].

22.     The purpose of this Motion is to notify *all* General Managers of their right to recover wages earned and owed.

## MEMORANDUM OF LAW

### I.      The Fair Labor Standards Act Authorizes Collective Actions.

The FLSA authorizes employees to bring an action on behalf of themselves and others similarly situated. 29 U.S.C. § 216(b). Specifically, the Act provides, in part, that:

> An action to recover the liability [for unpaid wages] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of themself or themselves and others similarly situated. **No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such a consent is filed in the court in which such action is brought.**

*See id.* (emphasis added).

A District Court has the authority to issue an order requiring notice of an action under the FLSA. *See Hernandez, et al. v. Starbucks Coffee Co.*, Case No. 0:09-cv-60073-WPD, [D.E. 33] (S.D. Fla. Apr. 24, 2009) (*citing Dybach v. State of Fla. Dep't of Corrections*, 942 F.2d 1562, 1567 (11th Cir. 1991) (the 'broad remedial purpose of the Act' is best served if the district court is deemed to have the power to give such notice to other potential members of the plaintiff class to 'opt in] if they so desire")) (internal citations omitted); *see also Hernandez, et al. v. Two Bros. Farm, LLC*, 2008 U.S. Dist. LEXIS 114398 (S.D. Fla. Oct. 14, 2008) (granting unopposed motion for conditional class certification under Section 16(b) of the FLSA). If an employee-plaintiff wants to maintain an opt-in collective action against his employer for violations of the FLSA, he must demonstrate, under the *lenient* standard articulated in *Hipp v. Liberty National*

*Life Ins. Co.*, that he is similarly situated to the proposed members of the collective class and that there is a desire by them to join the lawsuit. 252 F.3d 1208, 1217 (11th Cir. 2001) (emphasis added); *Dybach*, 942 F.2d at 1567.

## II.    Applicable Standards for Initial Certification of Collective Actions.

FLSA collective actions operate differently than the typical class action lawsuit under Rule 23 of the Federal Rules of Civil Procedure. Under the FLSA, an employee interested in joining, or opting-in to, a collective action to recover wages must file a written consent in order to become a party to the suit. 29 U.S.C. § 216(b). Without signing and filing such an express consent, employees are not bound by the outcome of the case and the possibility of future litigation remains. *Id.* Conversely, in traditional class actions under Rule 23, a plaintiff initiating a class action automatically represents every member of the class that has not expressly "opted-out." Rule 23, Fed.R.Civ.P.

In *Hoffman-La Roche, Inc. v. Sperling*, the Supreme Court ruled that not only did trial courts have authority to compel defendant-employers to provide names and addresses of potential plaintiffs through the pretrial discovery process, but that this authority also included sending court-authorized consent forms to potential plaintiffs. 293 U.S. 165 (1989). Trial court involvement in the notice process is inevitable in cases with numerous plaintiffs where written consent is required by statute. Thus, it lies within the sound discretion of the trial court to begin its involvement early, at the point of the initial notice, rather than at some later time. *Id.* Court authorization of notice serves the legitimate goal of avoiding duplicative litigation and setting cut-off dates that will expedite disposition of the action. *Id.* It is in furtherance of the FLSA's "broad remedial purpose" that courts have the authority to notify potential opt-in plaintiffs of their right to join an existing action early in the proceeding. *Id.* at 169.

**A.      The Eleventh Circuit Requires Only Minimal Evidence to Support Conditional Class Certification Under the FLSA.**

The Eleventh Circuit utilizes a two-tiered approach to certification of an opt-in class pursuant to 29 U.S.C. § 216(b). *See Hernandez v. Starbucks Coffee Co.,* Case No. 0:09-cv-60073-WPD, [D.E. 33] (S.D. Fla. Apr. 24, 2009) (conditionally certifying a class of misclassified "managers") (*citing Hipp v. Liberty National Life Ins. Co.*, 252 F.3d at 1218 (internal citations omitted)). Under this approach, the court makes an initial determination, based solely upon the pleadings and any affidavits, whether notice of the action should be given to potential class members. *Id.* During Stage I notice proceedings, "[p]laintiffs need show only that their positions are similar, **not identical**, to the positions held by the putative class members." *Grayson v. K-Mart Corp.*, 29 F.3d 1086, 1096 (11th Cir. 1996) (internal citations omitted) (emphasis added). Furthermore, named plaintiffs and opt-in class members are similarly-situated if they are subject to **similar job requirements and pay provisions** or if they can provide a **modest factual showing** that they were victims of a **common decision, policy, plan or practice**. *Dybach*, 942 F.2d at 1567-68; *Barron v. Henry County School System*, 242 F. Supp. 2d 1096, 1103 (M.D. Ala. 2003) (emphasis added).

Because the Court has minimal evidence at this stage of the proceedings, this determination is made using a fairly "lenient" standard, and typically results in conditional certification of a representative class. *Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1243 (11th Cir. 2003); *Anderson v. Cagle's Inc.*, 488 F.3d 945, 953 (11th Cir. 2007); *Hernandez v. Starbucks Coffee Co.*, Case No. 0:09-cv-60073, [D.E. 33] (S.D. Fla. 2009) (*citing Stone v. First Union Corp.*, 203 F.R.D. 532, 536 (S.D. Fla. 2001)). In fact, the similarly-situated requirement "is more elastic and less stringent than the requirements found in Rule 20 (joinder) and Rule 42 (severance)." *Grayson*, 79 F. 3d at 1095.  Moreover, allowing plaintiffs and the

putative class members to proceed through both notice and discovery before final certification is contemplated by the two-tier approach. *Leuthold v. Destination America*, 224 F.R.D. 462, 467 (N.D. Cal. 2004) ("The two-tier approach contemplates progression through the notice stage before reaching the more rigorous inquiry required to maintain the class. This is evident from the methods usually employed to decide the issues raised by the two tiers."). It is not until the "second stage" of certification, armed with full discovery, that the district court may reassess its initial certification decision and make a "factual determination on the similarly situated question." *Hipp*, 252 F.3d at 1218) (internal citations omitted).

**B.     The "Merits" of Plaintiff's Claims are Not Considered When Determining Whether to Grant Notice to Potential Class Members.**

Despite allegations in at least two (2) other states that Defendants utilized a misclassification policy identical to the one at issue in this case, Plaintiff anticipates that Defendants will continue to deny the elements of his claims until this matter is resolved. Notwithstanding, at the "conditional certification" stage, courts do not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be "similarly-situated." *Kreher v. v. City of Atlanta*, 2006 WL 739572, at *4 (N.D. Ga. 2006) (*citing Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005) ("The focus of [the conditional certification] inquiry is not whether there has been an actual violation of law, but rather on whether the proposed plaintiffs are 'similarly situated under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated.'"); *Shajan v. Baralo, Ltd.*, 2010 WL 2218095, at *1 (S.D.N.Y. 2010) (At the conditional certification stage, "[w]eighing of the merits is absolutely inappropriate."); *Gjurovich v. Emmanual's Marketplace, Inc.*, 282 F.Supp. 2d 91, 96 (S.D.N.Y. 2003) ("Once the Plaintiff makes a colorable claim for relief, the only inquiry necessary is whether the potential plaintiffs to be notified are similarly-situated to the named plaintiff . . ..");

*Goldman v. Radioshack Corp.*, 2003 WL 21250571 at *8 (E.D. Pa. 2003) ("A fact-specific inquiry is conducted only after discovery and a formal motion to decertify the class is brought by the defendant.").

In *Hernandez v. Starbucks Coffee Co.*, this Court granted a motion for conditional certification on behalf of putative class members who, like the Plaintiffs in this case, claimed they were owed additional overtime based on a company-wide policy applicable to its Managers. Case No. 0:09-cv-60073-WPD, [D.E. 33] (S.D. Fla. Apr. 24, 2009). In *Hernandez*, Starbucks denied that the plaintiffs were similarly-situated, denied that they were owed wages, and alleged that they were exempt from the FLSA's overtime requirements. *Id.* at [D.E. 8 pg. 3]. Yet, this Court granted the plaintiffs' Stage I motion for conditional certification and supervised the issuance of notice. *Id.* at [D.E. 33].

The fact that a jury must ultimately engage in a factual inquiry as to ultimate liability does not preclude conditional certification at the initial notice stage of the proceedings. *See Carrera v. UPS Supply Chain Solutions, Inc.*, 2011 WL 1303151, at *6 (S.D. Fla. Mar. 31, 2011); *Clincy v. Galardi South Enterprises, Inc.*, 2010 WL 966639, at *1, 3 (N.D. Ga. Mar. 12, 2010); *Kerce v. West Telemarketing Corp.*, 575 F. Supp. 2d 1354, 1365 (S.D. Ga. 2008); *Gutescu v. Carey International, Inc.*, 2003 WL 25586749, at *2, 15 (S.D. Fla. 2003). Accordingly, Defendant's denials and/or affirmative defenses are not relevant at Stage I.

### C.    Courts Do Not Consider Discovery During the Conditional Certification Stage.

The Eleventh Circuit and the district courts in it have consistently recognized that discovery at the first notice stage is unnecessary for the similarly situated determination. *See Grayson*, 79 F. 3d at 1099 (holding that a district court may, but is not required to hold an evidentiary hearing prior to making its Section 216(b) decision, particularly where the

defendant's rights are not substantially affected) (emphasis in original); *see also Lloredo v. Radioshack Corp.,* 2005 WL 1156030, at *1 (S.D. Fla. 2005) (refusing to examine discovery in making its first stage similarly situated determination); *Harrison v. Enterprise Rent-A-Car Co.*, 1998 WL 422169, at *13 (M.D. Fla. 1998) (holding that the fact that subsequent discovery may prove the original plaintiffs and the opt-in plaintiffs are not after all "similarly situated" does not defeat conditional class certification). An examination of discovery is not appropriate because, at this stage, the Court is not making a factual determination regarding whether the putative class members are "similarly situated." *Pendlebury v. Starbucks Coffee Co.*, 2005 WL 84500, at *3 (S.D. Fla. 2005).

Moreover, the court at this stage need not resolve factual disputes or make credibility determinations. *Scott v. Heartland Home Finance*, 2006 WL 1209813, at *3 (N.D. Ga. 2006); *Camper v. Home Quality Mgmt., Inc.*, 200 F.R.D. 516, 520 (D. Md. 2000) ("Factual disputes do not negate the appropriateness of court facilitated notice."). Accordingly, an analysis of any individualized defenses (or denials) is simply **not considered** at the conditional certification stage, but rather is reserved for the decertification stage. *Simpkins v. Pulte Home Corporation*, 2008 WL 3927275, at *5 (M.D. Fla. 2008) ("individual factual analysis is saved for the second stage of certification.").

> **D.   Requirement that Putative Class Members Desire to Join.**

The plain language of Section 216(b) does not require that a plaintiff-employee demonstrate that other potential class members are interested in joining the case. However, the Eleventh Circuit's standard for conditional certification contemplates the existence of other similarly-situated employees who may desire to join in the action. *See Hipp*, 252 F.3d 1208 at 1217; *Dybach*, 942 F.2d 1562 at 1567-68. Again, the standard is lenient and courts do not

employ a magic formula or threshold number of possible joiners as a prerequisite for conditional certification. In fact, the "existence of just one other co-worker who desires to join in is sufficient to 'rais[e] the Plaintiff's contention beyond one of pure speculation.'" *Espinoza, et al. v. Galardi South Enterprises, Inc., et al.*, Case No. 1:14-cv-21244-JG, [D.E. 116] (S.D. Fla. Oct. 23, 2014) (**three** opt-in plaintiffs and the existence of a separate civil action sufficient to support Stage I certification) (internal citations omitted); *Wydner v. Applied Card Sys., Inc.*, Case No. 09-80004-Civ-Marra, 2009 WL 3255585, at *3 (S.D. Fla. Oct. 7, 2009) (as few as **two** affidavits sufficient to warrant conditional certification); *Smith v. Cable Wiring Specialist, Inc.*, 2014 U.S. Dist. LEXIS 135446 (M.D. Fla. Sept. 25, 2014) (**one** opt-in plaintiff and prior litigation sufficient to warrant conditional certification); *Robbins-Pagel v. Wm. F. Puckett, Inc.*, 2006 WL 3393706 (M.D. Fla. 2006) (**three** affidavits alleging claims of unpaid overtime enough evidence to establish other similarly situated individuals may be interested in joining the action); *Wynder v. Applied Card Systems, Inc.*, 2009 WL 3255585 (S.D. Fla. 2009) (certifying FLSA collective action based on Plaintiff's declaration an **one** opt-in declaration); *Goudie v. Cable Communications, Inc.*, 2008 WL 4828394 (D. Or. 2008) (granting company-wide conditional certification based on **two** affidavits); *Sanders v. MPRI, Inc.*, 2008 WL 5572846 (W.D. Okla. 2008) (granting conditional certification with **zero** opt-ins or affidavits); *Pendlebury v. Starbucks Coffee Co.*, 2005 WL 84500 (S.D. Fla. 2005) (store managers from **two** Starbucks' locations in Broward County, Florida established the right to send notice to all similarly situated store managers across the United States who may have been misclassified as "exempt"); *Guerra v. Big John Concrete Pumping, Inc.*, 2006 WL 2290512 (S.D. Fla. 2006) (conditional certification of FLSA collective granted based upon **two** affidavits – that of the single named plaintiff and one opt-in plaintiff); *Zhao v. Benihana*, 2001 WL 84500, at *2 (S.D.N.Y. 2001) (**one** affidavit based

on plaintiff's "best knowledge" sufficient); *Gayle v. Jefferson County*, 2010 WL 1418395 (D. Id. 2010) (certifying collective action based on **one** plaintiff and one additional affidavit); *Dernovish v. AT&T Operations, Inc.*, 2010 WL 143692 (W.D. Mo. 2010) (certifying companywide collective action based on consents from only **three** call center locations); *and Barreda v. Prospect Airport Services, Inc.*, 2008 WL 7431307 (N.D. Ill. 2008) (certifying companywide collective action based on affidavits from only **one** location); *Tyler v. Payless Shoe Source, Inc.*, 2005 WL 3133763, at *3 (M.D. Ala. 2005) (**three** to **five** consents to join were sufficient to establish that others desired to opt-in).

The ultimate question in determining the instant motion, therefore, is whether the Plaintiff in this case meets his minimal, first-stage burden of showing that there exist other workers out there: (1) who worked for Defendant during the statutory period; (2) who may be interested in joining this case and; (3) who are similarly situated to the named Plaintiff with respect to their job requirements and pay provisions or who were victims of a common decision, policy, plan or practice. *Dybach*, 942 F.2d at 1567-58. This burden is light.

## III. Plaintiff Meets the Lenient Standard Required for Conditional Certification.

### A. There Exist Workers Who Desire to Join.

23.     Plaintiff James Ennis, and two (2) other workers have come forward to participate in this case. *See* [D.E. 1]; [D.E. 8-1] (Consent to Join of Opt-In Plaintiff William Gardner); [D.E. 9-1] (Consent to Join of Opt-In Plaintiff Dawn Baskin). Plaintiff Ennis and Opt-In Plaintiffs Gardner and Baskin have personal knowledge of additional workers who may be interested in participating in this Action if the Court were to facilitate notice. *See* Gardner Dec. [D.E. 8-1]; Baskin Dec. [D.E. 9-1]. Moreover, multiple individuals have come forward prior to this filing of this lawsuit to seek redress for Defendants' misclassification policy. *Terry, et al. v. TMX*

*Finance, LLC*, Case No.1:13-cv-6156 (N.D. Ill. May 19, 2014); *Fields, et al. v. TMX Finance, LLC*, Case No. 1:15-cv-53 (S.D. Ala. Oct. 19, 2015).

Prior litigation involving similar pay policies is evidence that other workers exist who would likely join. For example, in *Hernandez v. Starbucks Coffee Co.*, this Court found persuasive the fact that notice issued in a prior lawsuit resulted in the joinder of 900 opt-in plaintiffs. Case No. 0:09-cv-60073-WPD, [D.E. 33 at pg. 3]. A similar result was reached in *Smith v. Cable Wiring Specialist, Inc.*, 2014 U.S. Dist. LEXIS 135446 (M.D. Fla. Sept. 25, 2014).

Here, Plaintiffs present evidence of two (2) prior lawsuits filed against Defendant TMX Finance, LLC – both of which ultimately settled – including similar allegations of misclassification of Managers. This evidence corroborates Plaintiff Ennis' allegations that similarly-situated workers exist who will join in this case if given proper notice. *See Terry, et al. v. TMX Finance, LLC*, Case No.1:13-cv-6156, [D.E. 76] (N.D. Ill. May 19, 2014); *Fields, et al. v. TMX Finance, LLC*, Case No. 1:15-cv-53, [D.E. 40] (S.D. Ala. Oct. 19, 2015). Indeed, had the Courts in the prior litigation against this same Defendant issued notice to *all* workers who suffered lost wages because of Defendants' misclassification policy, Plaintiff Ennis may have asserted his claims earlier.

**B.     Plaintiff and the Putative Class Members are Similarly Situated.**

One way to determine whether the putative plaintiffs in this action are "similarly-situated" for the purpose of facilitating notice is by evidence (albeit minimal) that the putative class members were subject to a uniform pay policy. *Guerra v. Big Johnson Concrete Pumping, Inc.*, 2006 WL 2290512 *3 (S.D. Fla. May 17, 2006) (proposed notice allowed to class based on allegation of company-wide policy); *Lima v. Int'l Catastrophe Solutions, Inc.*, 493 F. Supp. 2d

793, 799 (E.D. La. 2007) (conditional certification granted based on allegations of company-wide policy of misclassification); *Gonzalez v. Select Onion Co., LLC*, 2007 WL 1989698, *2 (D. Or. July 6, 2007) (similarly situated found at conditional stage based on allegation of all employees subjected to general policy of failure to pay overtime); *Hernandez v. Starbuck Coffee Co.*, Case No. 0:09-cv-60073-WPD (S.D. Fla. Apr. 24, 2009) (same). Plaintiff has provided this Court with record evidence that he and other General Managers were similarly-situated in that they: (1) were subject to a uniform General Manager Pay Policy (i.e. they were misclassified as "exempt"); and (2) regularly worked more than forty (40) hours per week without proper overtime compensation. The evidence submitted to the Court, including the claims of prior litigants who suffered lost wages as a result of the same policy, establishes that Defendants' pay practices were uniformly applied throughout the country. Accordingly, Plaintiff has met the lenient burden contemplated in *Hipp* for establishing the "similarly situated" prong.

**IV.   Plaintiff's Notice is Accurate and Should Be Posted at Defendant's Locations.**

Plaintiff's Proposed Notice Form is attached hereto as <u>Exhibit A</u>. Plaintiff's Proposed Notice is "timely, accurate, and informative." *See Hoffman La Roche*, 493 U.S.C at 172. The Proposed Notice achieves the ultimate goal of providing current and former employees with accurate and timely notice concerning the pendency of the collective action and as well as their right to be free of retaliation. The Notice as proposed should be adopted by this Court and provided to *all* putative class members who worked at all of Defendant's locations where Store Managers are employed.

**A.   The FLSA Protects Putative Class Members from Coercion, Intimidation and Retaliation.**

Section 15(a)(3) of the FLSA makes it unlawful:

> For any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA] or has testified or is about to testify in any such proceeding . . .

29 U.S.C. 215(a)(3). In construing the scope of activities protected by Section 15(a)(3), courts regularly give protection to activities that are not specifically enumerated so as to promote the FLSA's remedial nature. As explained by the Supreme Court in *Mitchell v. Robert DeMario Jewelry*:

> Congress did not seek to secure compliance with [the FLSA] through continuing detailed federal supervision or inspection of payrolls. Rather **it chose to rely on information and complaints received from employees seeking to vindicate rights claimed to have been denied. Plainly, effective enforcement could thus only be expected if employees felt free to approach officials with their grievances.** This end the prohibition of Section 15(a)(3) against discharges and other discriminatory practices was designed to serve. **For it needs no argument to show that fear of economic retaliation might often operate to induce aggrieved employees quietly to accept substandard conditions.** By the proscription of retaliatory acts set forth in Section 15(a)(3) . . . Congress sought to foster a climate in which compliance with the substantive provisions of the Act would be enhanced.

361 U.S. 288, 292, 14 WH Cases 416 (1960) (internal citations omitted) (emphasis added). In other words, the key to interpreting the FLSA's antiretaliation provision "is the **need to prevent employees' fear of economic retaliation** for voicing grievances about substandard conditions." *Brock v. Richardson*, 812 F.2d 121, 124, 27 WH Cases 1689, 1691 (3d Cir. 1987) (emphasis added). Here, Plaintiffs seek to include in the Notice a provision informing putative class members of their right to be free from coercion should they chose to participate in this case. The FLSA mandates protection for employees who are the victims of retaliation by providing a private cause of action under Section 15(a)(3). The putative class members should be notified fully of their rights so that they can make informed decision(s) about whether or not to

participate in this case. This provision promotes full participate as well as the "just, speedy and inexpensive" resolution of the class of all putative class members. *See* Rule 1, Fed.R.Civ.P.

Although a defendant in a § 216(b) action is not categorically forbidden from communicating with prospective opt-in plaintiffs, district courts are empowered with **broad discretion** to limit the nature of the communications between a party and putative class members. *See Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1201–03 (11th Cir.1985) (recognizing district court's authority to police class member contacts and to prohibit defendant from engaging in unsupervised, unilateral communications with plaintiff class members to solicit exclusion requests from Rule 23 class); *Jones v. Casey's General Stores*, 517 F.Supp.2d 1080, 1088 (S.D. Iowa 2007) ("[T]his Court has relatively **broad discretion** in limiting communications with putative collective members when such communications cross the boundaries of propriety, including when the communications are unbalanced, misleading, or factually inaccurate.") (emphasis added); *Maddox v. Knowledge Learning Corp.*, 499 F.Supp.2d 1338, 1342–43 (N.D.Ga.2007) (observing that district courts in § 216(b) actions rely on **broad case management discretion** to allow pre-notice communications "while actively limiting misleading statements in such communications") (emphasis added); *Belt v. Emcare, Inc.*, 299 F.Supp.2d 664, 667 (E.D.Tex.2003) ("As in Rule 23 class actions, courts have the authority to govern the conduct of counsel and parties in § 216(b) collective actions.").

The anti-retaliation section in the Proposed Notice is consistent with the authorities cited above, is conservatively worded and protects the interests of the putative class members without creating any undue burden upon Defendant. Accordingly, Plaintiffs respectfully request its inclusion therein.

### B.    Method of Service.

Plaintiff requests that the Proposed Notice (Exhibit A) be mailed, with a self-addressed return envelope to each potential class member via First Class Mail and that a copy of the notice be posted at each of Defendants   "store locations" where General Managers are currently employed. *See Whitehorn v. Wolfgang's Steakhouse, Inc.*, 2011 WL 420528, at *2 (S.D.N.Y. Feb. 8, 2011) ("Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail."); *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 493 (E.D. Cal. 2006) (finding that first class mail, combined with posting, provided for the "best notice practicable" to the potential class); *see also Abdul-Rasheed, et al. v. Kablelink Communications, LLC, et al.*, Slip Copy, 2013 WL 5954785, *6 (M.D. Fla. 2013) (permitting mailing, e-mailing and posting of notice with a reminder notice); *and Whitaker, et al. v. Kablelink Communications, et al.*, Slip Copy, 2013 WL 5919351, *5 (M.D. Fla. 2013) (same).

Plaintiff further requests that he be permitted to send, via Electronic Mail, a "Follow-up" Notice (attached hereto as Exhibit B) to each of the potential class members who does not respond to the initial Notice mailing. Plaintiff proposes that the "Follow-up" Notice be sent to the remaining class members on the fourteenth (14th) day prior to the close of the Court-ordered Notice Period. *Watson v. Jimmy John's, LLC*, 2016 U.S. Dist. LEXIS 1437 (N.D. Ill. Jan. 6, 2016) (authorizing electronic (E-Mail) notice in FLSA collective); *Weathersby v. Technology Training Systems, Inc.*, Case No. 1:12–cv–09963, Docket Entry 32 (N.D. Ill. 2013) (granting Plaintiff's motion to approve "reminder" notice to potential opt-ins in FLSA collective action involving multiple locations nationwide); *see also Abdul-Rasheed* at *id.* and *Whitaker* at *id.*

**V.     Notice Should Be Given Within a Three-Year Statute of Limitations Period.**

Notice within a three-year statute of limitations period is appropriate in this case. The FLSA allows plaintiffs to collect damages within a three-year statute of limitations if it is shown that a defendant's violation of the FLSA was "willful" – meaning the "employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Whether Defendants' violations of the FLSA here were willful is an issue that goes to the merits of the case and not whether notice should be issued to potential claimants. *Villatoro v. Kim Son Restaurant, L.P.* 286 F.Supp. 807, 811 (S.D. Tex. 2003).

Plaintiff has alleged sufficient facts to raise an inference of willfulness in this case. Namely, that TMX Finance, LLC defended (and settled) two prior cases where its misclassification policy was at issue. *See supra*. Additional facts concerning a willfulness determination are an appropriate focus for discovery in this case and Defendants may challenge the applicable statute of limitations again at a later time, assuming they choose to plead the defense in this case. Thus, for purposes of the initial stages of this proceeding, notice should go to all General Managers who were employed by Defendants during the three-year period preceding the Court's ruling on the instant Motion. *See Resendiz-Ramirez v. P&H Forestry, LLC*, 515 F.Supp. 2d 937 (W.D. Ark. 2007).

**VI.     Limited Discovery of Contact Information for Putative Class is Necessary to Effectuate Notice.**

The opt-in provision of the FLSA requires some procedure for identifying and notifying potential class members. *Disimone v. Atlas Service, Inc.*, 2009 WL 5166262 (S.D. Fla. 2009) (ordering defendant to produce a list of plaintiffs' coworkers prior to conditional certification); *Morden v. T-Mobile USA, Inc.*, 2006 WL 1727987, at *3 (W.D. Wash. 2006) (compelling

defendant to produce the names and addresses of potentially similarly situated employees despite the fact that no conditional class certification motion was pending before the court.). "The first step is to identify those employees who may be similarly situated and who may therefore ultimately seek to opt in to the action." *Id.* As such, early discovery of a mailing list is routinely disclosed in FLSA collective actions because the lists are necessary to facilitate notice. *See, e.g. Hoffmann-La Roche*, 493 U.S. at 165; *see also Dietrich v. Liberty Square*, 230 F.R.D. 574, 581 (N.D. Iowa 2005); *Gieseke v. First Horizon Home Loan Corp.*, 406 F.Supp.2d 1164, 1169  (D. Kan. 2006).[4] In this case, discovery of the putative class members' names, job titles, last known addresses, personal e-mail addresses, telephone numbers, dates of birth, and dates of employment is warranted. *Brown v. Discrete Wireless, Inc.*, 2014 WL 6607006 (M.D. Fla. 2014) (ordering production of the names, job titles, last known addresses, personal e-mail addresses, telephone numbers, dates of birth, dates of employment, and last four digits of social security numbers of putative class members); *see also Weathersby v. Technology Training Systems, Inc.*, Case No. 1:12−cv−09963, Docket Entry 32 (N.D. Ill. 2013). Accordingly, to the extent necessary to the determination of the instant motion and/or distribution of proper notice to all affective employees, Plaintiff seeks entry of an Order requiring the production of this information.

## <u>CONCLUSION</u>

In light of the broad remedial provisions of the FLSA, coupled with the incredibly lenient standard for conditional certification, Plaintiff's allegations along with the evidence of record are

---

[4] The names and addresses of potential class members are discoverable during the regular course of discovery even absent judicial notice because the putative class members are critical fact witnesses in this lawsuit. *Hoffman La-Roche* acknowledged the existence of "alternative bases for discovery, for instance that the employees might have knowledge of other discoverable matter." 493 U.S. at 160; *see also Franco v. Bank of America Corp.*, 691 F.Supp.2d 1324 (M.D. Fla. 2010)(granting plaintiff's motion to compel discovery of names of potential similarly situated employees).

more than sufficient to satisfy Plaintiff's relatively light burden of showing this Court that there exist workers similarly-situated to Plaintiff Ennis who are entitled to be notified of their statutory rights.

WHEREFORE, Plaintiff, JAMES ENNIS, on behalf of himself and all similarly situated individuals, respectfully requests that this Court issue an order:

a.      Conditionally certifying a class of current and former General Managers who work(ed) for Defendants at one or more of Defendants' "store locations" from January 2013 to the present, and who worked more than forty (40) hours per week without proper overtime compensation;

b.      Directing Defendants to produce, in an electronic readable format, to the undersigned counsel within fourteen (14) days of the Order granting this Motion a list containing the full names, job titles, last known addresses, personal e-mail addresses, telephone numbers, dates of birth, and dates of employment for all putative class members who worked as General Managers for Defendants between January 2013 and the present;

c.      Prohibiting contact with any individual disclosed as a putative class member for reasons related to this litigation until after such individual's Consent to Join has been filed;[5]

d.      Authorizing the undersigned counsel to send initial notice, in the form attached hereto as Exhibit A, to all individuals whose names appear on the list produced by the Defendants' counsel by first-class mail;

e.      Directing Defendants to post at every store location in which they employ General Managers covered by the FLSA claims raised in this lawsuit a copy of the initial notice in the form attached hereto as Exhibit A;

_____

[5] *See Brown v. Discrete Wireless, Inc.*, 2014 WL 6607006 at *3 (M.D. Fla. 2014).

21

f.      Authorizing the undersigned counsel to send a follow-up notice, in the form attached hereto as <u>Exhibit B</u>, to all individuals whose names appear on the list produced by the Defendants' counsel but who, by the fourteenth (14th) day prior to the close of the Court-approved notice period, have yet to opt in to the instant action; and

g.      Providing all individuals whose names appear on the list produced by Defendants' counsel a total of sixty (60) days from the date the notices are initially mailed to file a Consent to Join Form, in the form attached hereto as <u>Exhibit C</u>; and

h.      Such other and further relief as the Court deems just under the circumstances.

Respectfully submitted this <u>4th</u> day of February, 2016

<u>/s/ <i>Christina J. Thomas</i></u><br>
Christina J. Thomas<br>
Florida Bar No. 0074846<br>
Bernard R. Mazaheri<br>
Florida Bar No. 64397<br>
Morgan & Morgan<br>
20 N Orange Ave Ste 1600<br>
Orlando, FL 32801<br>
Tel – (407) 420-1414<br>
Emails – cthomas@forthepeople.com<br>
    bmazaheri@forthepeople.com<br>
<br>
<i>Counsel for Plaintiffs</i>

## <u>CERTIFICATE OF GOOD FAITH</u>

The Local Rules do not require conferral on motions for class certification. Should Defendants stipulate to the relief requested herein at any time prior to the Court's ruling on the instant Motion, the undersigned will promptly notify the Court.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing will be sent to Defendants

via U.S. Mail at 15 Bull St Ste 200, Savannah, Georgia 31401 on this 4th day of February 2016.

<u>**/s/ Christina J. Thomas**</u>
Christina J. Thomas